ROGERS, Circuit Judge, dissenting. DISSENT - Exactly for the reasons given by the majority, a documentation requirement imposed by a ear manufacturer is not material under the Ohio Dealer Act, Ohio Rev. Code § 4517.59(A)(20)(a), “simply because a manufacturer; opts to put it in, a contract.” Maj. Op. at 187. Likewise, the majority’s test of “significance or importance” makes good sense. Such a test serves the balance established in the Act of permitting a manufacturer to impose requirements reasonably related to the manufacturer’s interests, while not allowing requirements that serve primarily the oppressive purpose of justifying charge-backs. Summary judgment was not warranted, however, on the application of the test to the facts of this ease. The timing requirement imposed by GM is not a deadline for getting the paperwork to GM, but rather a deadline that GM requires the dealer to impose on- the customer. There is no argument here that how long a purchaser takes to give the required document .to the dealer at all affects the timing of GM’s processing of the paperwork. The only two bases in the record for the requirement are reflected in a paragraph fi’om an affidavit of GM’s employee Jeffrey Watts: The change in the timing requirement was made in 2012 in response to abuse or potential abuse to GM’s incentive system that GM discovered. When a vehicle is delivered under the program without the completed required CDA, eligibility for the VPP incentive is at risk. Mitigation of that risk.is entirely within the dealer’s control because the dealer can work with the customer to obtain the required documentation. Having a defined “deadline” for obtaining the CDAs also promotes relationships with customers by .ensuring that dealers promptly complete all required documentation and avoids having delays and potentially upsetting customers if dealers have to track down customers for documentation months after a sale. The reference to “abuse or potential abuse” gives no indication how a timing requirement will prevent abuse. The majority independently provides a “prophylactic" theory for the manufacturer’s abuse contention: by denying chargebacks where the customer had more time to obtain the required documentation, it will be harder for purchasers to obtain the required document illegitimately. But .there is nothiijg in the record to indicate that it takes longer to get an illegitimate document than to get a legitimate one, particularly when the purchaser decides when to first, walk into the dealership. Assessing the validity of a policy based upon a court’s ability to come up with some possible justification for it also, smacks of rational basis review under the Equal Protection Clause, rather than the enforcement of a remedial statute like the one here, designed to protect dealers from manufacturer oppression. See Earl Evans Chevrolet, Inc. v. Gen. Motors Corp., 74 Ohio App.3d 266, 598 N.E.2d 1187, 1193 (1991). The other justification for the timing requirement that GM requires dealers to impose is that customers will be upset by having more rather than less time to provide the needed documentation. This sounds at best like an after-the-fact rationalization rather than a genuine concern. Conclusive acceptance of such weak rationales as significant or important effectively reads the protection against petty chargebacks out of the statute. Similar rationales could be spun for the font requirement that the majority correctly gives as a paradigmatic example of a contract requirement that would not be material under the Dealer Act. A larger font would permit the document to be read more easily, or might convey seriousness rather than frivolity.. Such rationales would not be irrational, .but they would not meet the materiality requirement that would justify making the dealer bear the cost of the incentives offered by the manufacturer. In short, the dealer in this case has presented a genuine issue of material fact as to whether the timing requirement was not material. Accepting the flimsy rationales of the manufacturer in this case, without more, unduly undermines the protections of the Ohio Dealer Act. On this point I respectfully dissent. In all other respects, I agree with the majority opinion.